FILED
CLERK, U.S. DISTRICT COURT
8/14/26
CENTRAL DISTRICT OF CALIFORNIA
BY CS DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

GRACE MARIE TUDOR
Plaintiff, Pro Se
1534 N. Moorpark Rd #242
Thousand Oaks, CA 91360
Telephone: (805) 905-5045
Email: Grace@Tudorinternational.com

FEE PAID

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GRACE MARIE TUDOR,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SANTA BARBARA; GUADALUPE “LUPE” MENDOZA, individually; HEATHER RACE, individually; and DOES 1–25, inclusive,<br><br>Defendants. | Case No.: 2:26-cv-09079-DOC-RAO<br><br>COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983<br><br>DEMAND FOR JURY TRIAL |

## I. NATURE OF THE ACTION

1. This civil-rights action arises from the governmental seizure of Plaintiff Grace Marie Tudor’s minor children, J.D. and I.D., on August 22, 2024, pursuant to protective-custody warrants sought by Santa Barbara County Child Welfare Services (“CWS”).

2. Plaintiff does not ask this Court to reverse, invalidate, modify, or review the subsequent juvenile dependency judgment, custody orders, appellate decision, or any present custody arrangement.

3. Plaintiff instead seeks damages for independently actionable constitutional violations arising from the pre-removal investigation, procurement of the August 22, 2024 protective-custody warrants, and resulting seizure. Plaintiff alleges that

materially misleading information and omissions were deliberately or recklessly presented in obtaining judicial authorization and that the resulting seizure unconstitutionally interfered with Plaintiff's protected familial relationship with J.D. and I.D. Plaintiff additionally pleads deliberate fabrication or knowing material distortion only as an alternative theory to the extent the required individual knowledge, state of mind, causation, and use of false evidence are established, and pleads municipal liability only to the extent an actionable County policy, established practice, deliberately indifferent omission, or policymaker action is established to have been the moving force behind an underlying constitutional violation.

4. Defendant Guadalupe “Lupe” Mendoza was the CWS social worker who investigated the allegations immediately preceding removal.

5. On August 20, 2024, two days before seeking removal, Mendoza personally interviewed J.D. and I.D.

6. Mendoza documented that both children appeared clean and well groomed and displayed no visible marks, bruises, or injuries indicative of physical abuse or neglect.

7. Mendoza further documented that both children reported feeling safe with Plaintiff.

8. Mendoza documented that J.D. reported that he did not feel safe with Father.

9. Mendoza also received information concerning the children’s serious preexisting psychological diagnoses and relevant psychological history.

10. Two days later, on August 22, 2024, Mendoza personally submitted protective-custody warrant applications concerning J.D. and I.D. and signed supporting affidavits under penalty of perjury.

11. Mendoza's warrant presentation relied materially upon an accumulated history of approximately forty-one child-welfare reports across multiple counties, allegations concerning coaching, and the contention that the children had been subjected to repeated investigations, interviews, and examinations.

12. Plaintiff does not allege that the cumulative number of approximately forty-one reports was necessarily fabricated.

13. Plaintiff alleges instead that the presentation materially distorted the source, attribution, nature, and significance of that accumulated history.

14. The historical reporting record included reports made by persons other than Plaintiff, including mandated reporters and medical professionals exercising independent professional judgment.

15. Plaintiff alleges that reports personally made by Plaintiff were materially different from reports independently made by mandated reporters or other third parties.

16. Plaintiff further alleges that the existence of a referral was materially different from an agency's independent decision to investigate that referral.

17. An investigator's decision to interview a child was likewise materially different from an interview personally requested, ordered, or controlled by Plaintiff.

18. An ordinary medical encounter was materially different from a genital examination or specialized forensic medical examination.

19. Plaintiff alleges that these distinctions were material because the accumulated number of reports, interviews, investigations, and examinations was itself used to support the contention that Plaintiff was causing serious emotional harm to the children.

20. Later sworn testimony concerning the historical referral records established that the investigating witness did not possess evidence that Plaintiff prompted referrals attributed to other reporting parties.

21. One significant example involved the May 30, 2024 medical encounter concerning I.D.

22. Treating medical provider Christina Bush subsequently stated under penalty of perjury that she personally examined I.D., that the child spontaneously identified genital pain, and that Bush documented physical findings.

23. Bush further stated her professional opinion that I.D. did not appear to have been coached.

24. Bush confirmed that she herself made the resulting child-welfare report in her capacity as a mandated reporter.

25. Plaintiff does not rely upon Bush's evidence to ask this Court to determine whether Father committed sexual abuse.

26. Plaintiff relies upon Bush's evidence because it demonstrates that the May 30 report had an independent professional source and medical basis and was not simply another report personally generated by Plaintiff.

27. Additional professional review concerning the May 30 medical evidence existed before the August removal, including opinions supporting additional medical follow-up.

28. Plaintiff alleges that her efforts to obtain follow-up medical care therefore had an objectively identifiable professional basis and were not accurately characterized merely as efforts to manufacture additional abuse allegations.

29. Information adverse to Plaintiff from the related family-law proceeding entered the child-welfare investigation.

30. Later sworn testimony established that at least one investigating social worker received and reviewed a declaration submitted by District Attorney Investigator Jeffrey Ellis but did not review Bush's declaration concerning the May 30 medical encounter and coaching issue.

31. Plaintiff does not allege that an investigator violated the Constitution merely by failing to review every document contained in the family-law file.

32. Plaintiff alleges that the selective information flow is relevant circumstantial evidence concerning whether adverse information was affirmatively incorporated while readily identifiable contrary information concerning the same central allegations was not meaningfully investigated.

33. Plaintiff does not presently allege that Mendoza personally possessed Bush’s declaration before August 22 unless discovery establishes that fact.

34. Plaintiff alleges Mendoza’s actual knowledge only as to facts presently shown to have been personally observed, documented, received, reviewed, or otherwise known by Mendoza.

35. Before the August 22, 2024 removal, Defendant Heather Race, a Santa Barbara County Social Services Supervisor, personally received material information from Ventura County personnel concerning Ventura County's overlapping child-welfare investigation.

36. Santa Barbara County's warrant materials state that, on August 16, 2024, the Ventura investigating social worker informed Race that the sexual-abuse allegation concerning Father was expected to close as unfounded and that an emotional-abuse allegation concerning Plaintiff would be added and closed as inconclusive.

37. Plaintiff does not allege that Ventura County's anticipated dispositions prohibited Santa Barbara County from conducting its own investigation or independently determining whether intervention was warranted.

38. Plaintiff alleges, however, that the information personally communicated to Race materially qualified the assertion that Plaintiff presented an immediate emotional-abuse emergency requiring removal without a less restrictive alternative.

39. Plaintiff presently does not allege that Race personally signed Mendoza's warrant affidavits.

40. Plaintiff alleges that Race's receipt of materially qualifying information before removal, together with her subsequent personal participation in the August 22 removal, provides a good-faith basis for discovery concerning Race's role in the pre-removal decision-making process, including whether she reviewed or approved the proposed removal, participated in supervisory review of the warrant applications, communicated Ventura County's information to Mendoza or other warrant participants, supplied information used in the applications, or directed actions concerning procurement of judicial authorization.

41. Race thereafter personally participated with Mendoza in execution of the August 22, 2024 removal.

42. Plaintiff seeks liability against Race solely for conduct she personally undertook, directed, approved, knowingly participated in, or caused, and not merely because she occupied a supervisory position.

## II. JURISDICTION AND VENUE

43. Plaintiff brings this action under 42 U.S.C. § 1983 for violations of rights secured by the United States Constitution.

44. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

45. The acts and omissions giving rise to this action occurred substantially within Santa Barbara County, California, which lies within the Central District of California.

46. Venue is therefore proper in this District.

47. Plaintiff seeks damages for alleged constitutional violations independently caused by Defendants and does not request appellate review of a state-court judgment.

## III. PARTIES

48. Plaintiff Grace Marie Tudor is an adult resident of California.

49. At the time of the challenged August 22, 2024 seizure, Plaintiff possessed legally recognized parental and custodial rights concerning J.D. and I.D. and a constitutionally protected interest in their care, custody, companionship, and management, subject to lawful governmental intervention consistent with the Constitution.

50. Defendant County of Santa Barbara is a California local governmental entity that operates Santa Barbara County Child Welfare Services.

51. Defendant Guadalupe “Lupe” Mendoza was at all relevant times employed by Santa Barbara County CWS and acted under color of state law.

52. Mendoza is sued in her individual capacity.

53. Defendant Heather Race was at all relevant times employed by Santa Barbara County CWS as a Social Services Supervisor and acted under color of state law.

54. Race is sued in her individual capacity for her own alleged conduct, knowledge, direction, approval, participation, or actionable omissions, and not merely because she supervised another employee.

55. Plaintiff presently does not know the true names and capacities of DOES 1-25.

56. DOES 1-25 are presently unidentified persons who may have personally participated in one or more of the challenged pre-removal activities alleged in this Complaint, including investigation, preparation or review of warrant materials, transmission or characterization of evidence, supervisory decision-making, information sharing, execution of the seizure, or retaliatory conduct.

57. Plaintiff does not allege that every DOE Defendant participated in every challenged act or is liable under every claim. Each DOE Defendant is sued only under a claim for which that Defendant's own conduct, knowledge, constitutionally required state of mind, causation, and other elements are established.

58. The references to particular DOE ranges in individual causes of action identify the presently unknown participants against whom that claim may apply and do not allege collective liability merely because a person falls within a numbered DOE range.

59. Plaintiff will seek leave to substitute the true name of an appropriate DOE Defendant when discovery establishes the person's identity and individual role, subject to the Federal Rules of Civil Procedure, applicable limitations principles, and other governing law.

## IV. RELEVANT NON-DEFENDANT ACTORS

60. Vanessa Kirker Wright was appointed minors’ counsel in the related family-law proceeding and exercised authority concerning the children during portions of the period preceding removal.

61. Wright is not presently named as a Defendant.

62. Wright's conduct and communications are alleged because she became an important conduit of information concerning the children before Santa Barbara CWS commenced the investigation resulting in removal.

63. District Attorney Investigator Jeffrey Ellis submitted a declaration in June 2024 seeking appointment of minors' counsel.

64. Ellis's declaration also documented that Plaintiff and her attorney had complained of alleged governmental bias and communicated an intention to pursue litigation against governmental entities.

65. Detective Adam Mik participated in the related law-enforcement investigation.

66. Mik later testified concerning law enforcement's independent role in deciding to conduct a Child Forensic Interview ("CFI") and its subsequent coordination with Wright.

67. Plaintiff alleges that after Wright obtained authority concerning the children, law enforcement brought Wright up to speed concerning previously investigated referrals and coordinated aspects of the CFI process through her.

68. Plaintiff alleges these facts to identify the pathway through which information moved among law enforcement, minors' counsel, family-court proceedings, and child-welfare investigators.

69. Christina Bush was the medical provider involved in the May 30 encounter and the mandated reporter who made the resulting child-welfare report.

70. Other medical and mental-health professionals reviewed or treated the children and generated evidence relevant to their medical and psychological histories.

71. Jacqueline or Jaclyn Boyd was a Santa Barbara CWS employee who later reviewed portions of the referral history and reporting-party information.

72. Plaintiff presently does not name Boyd as a Defendant because the evidence presently available does not sufficiently establish that Boyd personally participated in procurement or execution of the August 22 warrants or committed another identified non-immune act that caused the initial seizure.

73. Plaintiff relies upon Boyd's later source review only insofar as it assists in identifying what the underlying preexisting referral records actually contained.

## V. FACTUAL ALLEGATIONS

### A. Preexisting Emotional and Custodial History

74. Before the August 2024 removal, J.D. and I.D. had experienced substantial prior custody changes and separation from Plaintiff.

75. The children had documented psychological and behavioral symptoms and treatment predating the August 22 removal.

76. Plaintiff alleges that the existence of serious emotional symptoms was therefore distinct from the question of whether Plaintiff's reporting conduct caused those symptoms.

77. Plaintiff alleges that professional evidence concerning the children's psychological history and causation existed before removal and materially qualified a

simplistic inference that emotional symptoms themselves established emotional abuse caused by Plaintiff.

### B. The May 30 Medical Encounter

78. On May 30, 2024, I.D. was evaluated by Christina Bush.

79. During that encounter, Bush documented a spontaneous complaint of genital pain and physical findings.

80. Bush subsequently stated under penalty of perjury that she did not believe I.D. had been coached.

81. Bush herself made the resulting report to child-protection authorities as a mandated reporter.

82. Plaintiff alleges that the actual source of that report was material to any later attempt to use the accumulated reporting history as evidence that Plaintiff was fabricating allegations.

83. Plaintiff does not allege that Bush's opinion conclusively established whether abuse occurred.

84. Plaintiff alleges only that the report had an independent professional source and therefore could not accurately be treated merely as another unsupported report personally manufactured by Plaintiff.

### C. Appointment of Wright and Law-Enforcement Coordination

85. In June 2024, Ellis sought appointment of minors' counsel in the family-law proceeding.

86. Wright was subsequently appointed.

87. Mik later testified that after Wright obtained authority concerning the children, law enforcement coordinated with Wright regarding investigative matters and the Child Forensic Interview ("CFI") process.

88. Plaintiff alleges that law enforcement—not Plaintiff—made professional decisions concerning whether and how a CFI would occur.

89. Plaintiff alleges that the resulting governmental investigative intervention therefore could not accurately be attributed to Plaintiff as though she personally ordered or controlled the forensic process.

**D. Medical Dispute Before Removal**

90. During July 2024, Plaintiff sought further medical evaluation concerning I.D.'s continuing symptoms and the May 30 findings.

91. Plaintiff obtained or communicated professional opinions supporting additional medical follow-up.

92. Wright received communications concerning the medical dispute and I.D.'s continuing complaints.

93. Plaintiff alleges that this evidence demonstrates a professional medical basis for seeking follow-up care.

94. Plaintiff does not allege that Defendants were required to agree with every medical opinion obtained by Plaintiff.

95. Plaintiff alleges that the existence of those professional opinions materially qualified any assertion that Plaintiff sought additional care solely to manufacture evidence of abuse.

### E. Wright's Section 329 Application

96. Wright subsequently sought intervention from Santa Barbara CWS under California Welfare and Institutions Code section 329.

97. The application raised concerns concerning alleged false beliefs of sexual abuse, reporting activity, coaching, and the effect of repeated investigations or examinations upon the children.

98. Santa Barbara CWS thereafter commenced the investigation that resulted in the August 22 protective-custody warrant applications.

99. Plaintiff does not presently allege that every statement made by Wright was knowingly false.

100. Plaintiff alleges that Wright's presentation is relevant because it formed part of the informational chain leading to governmental investigation and seizure.

### F. Selective Family-Court Information

101. During later sworn testimony, an investigating social worker testified that she had received Ellis's declaration from the family-law matter.

102. The same witness testified that she had not reviewed Bush's declaration concerning the May 30 medical encounter and coaching issue.

103. Plaintiff alleges that this demonstrates that adverse family-court information entered at least part of the child-welfare investigation while materially contrary information addressing the same central allegations was not reviewed by that investigator.

104. Plaintiff does not allege that this fact alone establishes deliberate deception.

105. Plaintiff alleges that it supports discovery concerning what information was selected, transmitted, requested, reviewed, or deliberately avoided during the pre-removal investigation.

### G. Ventura Information and Race

106. Before the August 22 seizure, Social Services Supervisor Heather Race communicated directly with personnel involved in Ventura County's overlapping child-welfare investigation.

107. The August 22 warrant narrative states that Ventura's investigating social worker informed Race on August 16, 2024 that the sexual-abuse allegation concerning Father would be closed as unfounded and that allegations of emotional abuse by Plaintiff would be added and closed as inconclusive.

108. Plaintiff alleges that Race therefore had actual pre-removal knowledge that Ventura County had not substantiated emotional abuse against Plaintiff and expected the emotional-abuse allegation to close as inconclusive.

109. Plaintiff does not contend that Ventura County's conclusion legally controlled Santa Barbara County's investigation. Plaintiff alleges that the information was nevertheless materially relevant to whether Plaintiff presented an immediate emotional-abuse danger requiring emergency separation and whether reasonable alternatives short of removal existed.

### H. Mendoza's August 20 Investigation

110. On August 20, 2024, only two days before the seizure, Mendoza personally interviewed J.D. and I.D. at their school.

111. Mendoza documented that J.D. appeared clean and well groomed and was free of visible marks, bruises, or injuries indicative of abuse or neglect.

112. Mendoza likewise documented that I.D. appeared clean and well groomed and was free of visible marks, bruises, or injuries indicative of abuse or neglect.

113. After Mendoza explained the meaning of safety to J.D., J.D. reported that he felt safe with Plaintiff.

114. J.D. also reported that he did not feel safe with Father.

115. After Mendoza explained the meaning of safety to I.D., I.D. likewise reported that she felt safe with Plaintiff.

116. Mendoza also interviewed Plaintiff on August 20. Following that interview, Plaintiff transmitted information concerning the children's serious preexisting psychological diagnoses and relevant psychological history, which Mendoza's subsequent report recorded.

117. Plaintiff alleges that Mendoza therefore possessed actual, firsthand and contemporaneous information immediately before seeking emergency removal concerning the children's physical appearance and absence of observable physical injury or neglect; both children's statements that they felt safe with Plaintiff; J.D.'s statement that he did not feel safe with Father; and the children's serious preexisting psychological diagnoses and relevant psychological history.

**I. August 22 Protective-Custody Warrants**

118. On August 22, 2024, Mendoza personally submitted separate ex parte applications for protective-custody warrants concerning J.D. and I.D., docketed in the

Santa Barbara County Superior Court as protective-custody warrant matters for each child.

119. Mendoza identified herself in each application as the Santa Barbara County CWS social worker currently assigned to investigate the child and personally signed the applications and supporting affidavits.

120. Mendoza declared under penalty of perjury that the information contained in each affidavit was true and correct to the best of her knowledge and belief.

121. In each application, Mendoza selected as the asserted basis for emergency removal that there was substantial danger to the child's physical health or that the child was suffering severe emotional damage and that there were no reasonable means by which the child's physical or emotional health could be protected without temporary removal from parental custody.

122. The applications did not select the separate form grounds asserting that either child was in imminent danger of physical or sexual abuse or that the child's physical environment itself posed an imminent threat requiring removal. Instead, the selected ground was substantial danger to physical health or severe emotional damage together with the asserted absence of reasonable means to protect the child without temporary removal.

123. The factual narrative submitted with the applications relied extensively upon the parties' historical custody dispute, accumulated child-welfare reports, prior investigations, law-enforcement information, District Attorney Investigator Jeffrey

Ellis's June 2024 declaration, minors' counsel Vanessa Kirker Wright's August 2024 application, and the August 16 Ventura-to-Race communication.

### J. The Aggregate Referral Narrative

124. The warrant narrative stated that approximately forty-one reports alleging abuse and neglect had been filed with child-protection agencies in Santa Barbara, Ventura, and San Luis Obispo Counties, with additional reports made to law enforcement.

125. The same paragraph acknowledged that, of the reports actually investigated by child-protection agencies, the allegations had all been found unfounded or inconclusive.

126. Plaintiff does not allege that the approximate aggregate number of forty-one reports was necessarily false. Plaintiff alleges that the constitutional issue concerns the source, attribution, nature, and causal significance assigned to that accumulated history.

127. The warrant narrative further described repeated interviews and accusations and relied upon allegations that the children were being coached and subjected to repeated governmental and medical interventions.

128. The narrative expressly incorporated Wright's concerns and characterization of Dr. Bruce Whitney's opinions and concluded that CWS's review of the child-welfare history confirmed Wright's position that the children were unsafe with either parent.

### K. Omission of Mendoza's August 20 Investigation

129. Despite Mendoza having personally conducted a new investigation only two days before signing the affidavits, the warrant narrative did not disclose Mendoza's August 20 interviews of J.D. and I.D.

130. The affidavit did not disclose that Mendoza personally observed both children as clean, well groomed, and free of visible marks, bruises, or injuries indicative of abuse or neglect.

131. The affidavit did not disclose that, after Mendoza explained the meaning of safety, both J.D. and I.D. reported feeling safe with Plaintiff.

132. The affidavit likewise did not disclose that J.D. reported that he did not feel safe with Father.

133. The affidavit further did not disclose Mendoza's receipt, immediately after the August 20 interview, of information concerning the children's serious preexisting psychological diagnoses and relevant psychological history.

134. Plaintiff alleges that these were not remote or collateral facts unknown to the affiant. They were facts Mendoza herself personally obtained, observed, documented, or received during the investigation immediately preceding her sworn request for emergency judicial authorization.

135. The omission of Mendoza's August 20 investigation was material because Mendoza sought removal on the ground that the children faced substantial danger or severe emotional damage and that no reasonable means existed to protect them without separating them from Plaintiff.

136. The children's contemporaneous statements that they felt safe with Plaintiff materially qualified the contention that Plaintiff presented an immediate danger requiring emergency separation, although Plaintiff does not allege that a child's safety statement alone foreclosed governmental intervention.

137. J.D.'s contemporaneous statement that he did not feel safe with Father likewise bore upon the comparative safety assessment concerning removal from both parents.

138. Mendoza's firsthand observations that neither child displayed visible indicators of physical abuse or neglect materially qualified any assertion of immediate physical danger, while Plaintiff recognizes that the principal warrant theory also concerned alleged emotional harm.

139. The children's preexisting psychological diagnoses were material to causation because the existence of emotional symptoms was distinct from the question whether Plaintiff's reporting conduct caused those symptoms.

**L. Source Attribution and the May 30 Medical Encounter**

140. Because the quantity of reports and resulting governmental or medical interventions was used to support the alleged emotional-harm emergency, accurately identifying who initiated each report or intervention was material.

141. A report independently made by a treating medical professional pursuant to mandated-reporting obligations was materially different from a report personally initiated by Plaintiff; likewise, an agency's decision to investigate a referral or law

enforcement's decision to conduct a Child Forensic Interview was materially different from an intervention directed or controlled by Plaintiff.

142. The May 30, 2024 medical encounter provides a significant example. Treating provider Christina Bush later stated under penalty of perjury that she personally examined I.D., that I.D. spontaneously identified genital pain, that Bush documented physical findings, that she did not believe I.D. appeared coached, and that Bush herself made the resulting mandated child-welfare report.

143. Plaintiff does not rely upon Bush's evidence to prove whether Father committed sexual abuse. Plaintiff relies upon it because it identifies the actual professional source and medical context of a significant referral included within the accumulated history.

**M. Corrected-Warrant Allegations**

144. Plaintiff alleges that materiality must be assessed by reconstructing the warrant presentation after correcting materially misleading implications and adding material qualifying facts actually known to the affiant or other responsible warrant participants, and then determining whether the corrected presentation would still have supplied reasonable cause for the emergency removal actually requested.

145. A corrected presentation would retain the adverse evidence actually contained in the affidavits, including allegations of coaching, prior unfounded or inconclusive investigations, concerns raised by Wright and Ellis, and the May 2024 Child Forensic Interview. Plaintiff does not ask the federal court to disregard those adverse facts in assessing materiality.

146. A corrected presentation would additionally disclose Mendoza's own August 20 investigation conducted only two days before the warrant request, including that both children reported feeling safe with Plaintiff and that J.D. reported that he did not feel safe with Father.

147. It would disclose Mendoza's firsthand observations that both children appeared clean and well groomed and exhibited no visible marks, bruises, or injuries indicative of abuse or neglect, together with the serious preexisting psychological diagnoses and related information Mendoza received immediately before seeking removal, which were relevant to the source and causation of the children's emotional symptoms.

148. It would accurately distinguish the approximately forty-one-report aggregate from reports actually made by Plaintiff and, to the extent known to responsible warrant participants, identify significant reports independently made by mandated professionals rather than treating the aggregate history as a unitary measure of conduct attributable to Plaintiff.

149. It would distinguish referrals from later governmental decisions to investigate, ordinary investigative or therapeutic contacts from Child Forensic Interviews, and ordinary medical treatment from specialized or invasive forensic examinations, because those distinctions bore directly on whether Plaintiff herself caused the accumulated investigative burden relied upon as evidence of emotional harm.

150. It would accurately disclose that Ventura County informed Race six days before removal that the emotional-abuse allegation concerning Plaintiff was expected to be added and closed as inconclusive, while recognizing that Ventura's anticipated disposition did not legally bind Santa Barbara County.

151. Plaintiff alleges that these corrections must be considered cumulatively rather than in isolation. The applications selected a ground requiring substantial danger or severe emotional damage together with the absence of reasonable means to protect the children without removal. The attached factual narrative did not identify a safety plan, supervision arrangement, service, contact restriction, medical-management measure, or other less-restrictive protective alternative that had been considered and found inadequate. Plaintiff therefore alleges that, after adding Mendoza's omitted August 20 information and correcting the source and causal significance of the accumulated referral history, the remaining presentation would not have established reasonable cause for the selected emergency-removal ground and the issuing judicial officer would have declined to issue the protective-custody warrants.

**N. Issuance and Removal**

152. The protective-custody warrants were approved on August 22, 2024, and Mendoza and Race thereafter personally participated in taking J.D. and I.D. into governmental custody.

153. Plaintiff does not base liability upon testimony, advocacy, recommendations, or other conduct protected by absolute immunity in subsequent dependency proceedings. Plaintiff's principal claims concern pre-seizure investigative conduct,

alleged judicial deception or material distortion in procurement of the August 22 warrants, and personal conduct causing or participating in the resulting seizure, to the extent such conduct is independently actionable and not protected by applicable immunity.

## VI. FIRST CLAIM FOR RELIEF
## 42 U.S.C. § 1983
## JUDICIAL DECEPTION RESULTING IN UNCONSTITUTIONAL INTERFERENCE WITH FAMILIAL ASSOCIATION
## Fourteenth Amendment
## Against Mendoza and DOES 1-10

154. Plaintiff incorporates paragraphs 1 through 153.

155. Plaintiff possessed a constitutionally protected liberty interest in the care, custody, companionship, and management of J.D. and I.D.

156. Mendoza acted under color of state law and personally conducted the investigation immediately preceding the August 22 seizure.

157. Mendoza personally submitted and signed the August 22 protective-custody warrant applications and declared under penalty of perjury that the information contained in the affidavits was true and correct to the best of her knowledge and belief.

158. Plaintiff alleges that Mendoza deliberately or with reckless disregard for the truth presented, adopted, or omitted facts in a manner that created a materially misleading account of the source and significance of the accumulated referral and investigative history and the existence of an immediate emergency requiring removal.

159. Most significantly, although Mendoza personally interviewed both children only two days before requesting the warrants, the sworn factual narrative omitted her firsthand observations, both children's statements that they felt safe with Plaintiff, J.D.'s statement that he did not feel safe with Father, and the psychological-diagnosis information Mendoza received immediately before the warrant request.

160. Plaintiff alleges that Mendoza's omission of her own immediately preceding investigation, while affirmatively presenting older adverse historical information and third-party characterizations, was not a mere failure to locate an unknown record. Plaintiff alleges that Mendoza personally knew the omitted facts and deliberately or recklessly excluded materially qualifying information from the sworn presentation.

161. Plaintiff further alleges that the accumulated child-welfare history was presented without sufficient attribution to distinguish reports actually made by Plaintiff from independently initiated reports by mandated reporters or other persons and without adequately distinguishing referrals from investigations and later governmental interventions.

162. Plaintiff alleges that these representations and omissions were material because the accumulated number of reports and resulting investigative or medical contacts was itself used to support the contention that Plaintiff was causing severe emotional harm, while the selected warrant ground separately required a determination that reasonable means short of removal were unavailable. The sworn

narrative did not identify what less-restrictive protective alternatives had been considered and rejected.

163. Plaintiff alleges that after correcting the presentation and including the material information described above, the warrant court would have lacked reasonable cause to find that Plaintiff herself posed the selected level of danger or was causing severe emotional damage for which no reasonable means short of removal existed. Plaintiff alleges that, on the corrected presentation, the issuing judicial officer would have declined to issue the August 22 protective-custody warrants.

164. Plaintiff therefore alleges that the challenged deliberate or reckless misrepresentations and omissions were material to issuance of the warrants, caused unconstitutional interference with Plaintiff's protected familial relationship, and directly and proximately caused damages according to proof.

## VII. SECOND CLAIM FOR RELIEF
## 42 U.S.C. § 1983
## INTERFERENCE WITH FAMILIAL ASSOCIATION
## Fourteenth Amendment
## Against Mendoza, Race, and DOES 1-10

165. Plaintiff incorporates paragraphs 1 through 164.

166. Plaintiff possessed a constitutionally protected liberty interest in the care, custody, companionship, and management of J.D. and I.D.

167. Mendoza and Race acted under color of state law.

168. Mendoza personally conducted material portions of the pre-removal investigation, personally procured judicial authorization through the August 22 warrant applications, and participated in the resulting seizure.

169. Race personally possessed materially qualifying pre-removal information communicated by Ventura County concerning its overlapping investigation and thereafter personally participated in execution of the removal. Plaintiff does not allege that execution of a facially issued warrant, standing alone, establishes Race's liability. Plaintiff alleges liability against Race only to the extent her own pre-warrant direction, approval, information-sharing, knowing participation, or other conduct is established to have caused or substantially contributed to the constitutional deprivation.

170. Plaintiff alleges that governmental interference with the parent-child relationship may not be procured through deliberately or recklessly false or materially misleading representations or omissions that are material to the judicial decision. This claim is based upon independently actionable pre-removal conduct and causation, not merely upon the fact that Defendants participated in later execution of a court order.

171. Plaintiff alleges that Mendoza caused or substantially participated in such unconstitutional governmental interference through the conduct alleged above.

172. As to Race, Plaintiff seeks liability only for her own actions, knowledge, direction, approval, participation, or actionable omissions where she had a legally sufficient personal role in causing the constitutional deprivation, and not merely because she supervised another employee.

173. Plaintiff seeks discovery concerning Race's actual participation in review, approval, direction, information-sharing, or supervisory decision-making connected with procurement of the August 22 warrants. Plaintiff seeks individual liability against

Race only if discovery establishes a constitutionally sufficient causal connection between Race's own conduct and the alleged deprivation. As a direct and proximate result of actionable conduct established against each Defendant, Plaintiff suffered loss and impairment of her familial relationship and damages according to proof.

**VIII. THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**DELIBERATE FABRICATION / KNOWING MATERIAL DISTORTION OF EVIDENCE**
**Fourteenth Amendment**
**Against Mendoza and DOES 1-20**

174. Plaintiff incorporates paragraphs 1 through 173. This claim is pleaded in the alternative to the judicial-deception theory and is limited to conduct satisfying the separate constitutional requirements for deliberate fabrication or knowing material distortion of evidence.

175. Plaintiff does not allege constitutional fabrication merely because an investigator made a mistake, failed to conduct a perfect investigation, disagreed with Plaintiff, credited competing evidence, or reached an adverse conclusion.

176. Plaintiff alleges this claim only to the extent a Defendant knowingly created, materially altered, falsely attributed, adopted, maintained, or transmitted factual information the Defendant knew to be false or materially misleading, or deliberately transformed known facts into a materially false evidentiary narrative that caused the constitutional deprivation.

177. The accumulated referral history presents a specific issue requiring discovery because source-identifying records existed from which persons accessing

those records could distinguish reports personally made by Plaintiff from reports independently initiated by mandated reporters, medical professionals, law enforcement, Father, or other third parties.

178. Later sworn testimony concerning those source records established that the investigating witness lacked evidence that Plaintiff prompted referrals attributed to other reporting parties.

179. Plaintiff therefore seeks discovery concerning which Defendants accessed, reviewed, possessed, transmitted, summarized, altered, or relied upon source-specific reporting records before the August 22 seizure; what those records showed concerning reporting-party identities and initiation of investigations; and whether any Defendant knowingly represented independently generated reports or governmental investigative decisions as though they had instead been personally generated, directed, or controlled by Plaintiff.

180. Plaintiff seeks liability under this claim only where the evidence establishes the Defendant's individual knowledge, constitutionally sufficient state of mind, affirmative participation, causation, and use of fabricated or knowingly false evidence. Plaintiff does not allege that every omission supporting the judicial-deception claim automatically establishes deliberate fabrication. Plaintiff will seek amendment only where discovery supplies a good-faith factual and legal basis to identify an additional responsible participant.

**IX. FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**MUNICIPAL LIABILITY UNDER MONELL**
**Against County of Santa Barbara**

181. Plaintiff incorporates paragraphs 1 through 180.

182. Plaintiff does not seek to impose liability upon the County of Santa Barbara merely because it employed Mendoza, Race, or another person who allegedly violated Plaintiff's constitutional rights.

183. Plaintiff alleges on information and belief that the constitutional deprivation occurred through a County-controlled protective-custody warrant process involving County-maintained referral records, County personnel responsible for preparing sworn warrant materials, supervisory or institutional review of emergency-removal requests, and County practices governing what materially qualifying or contrary information must be verified and presented to the judicial officer.

184. The County's underlying child-welfare records were capable of identifying material distinctions among reporting parties, alleged perpetrators, referrals, investigations, mandated reports, interviews, and other investigative events. Pre-removal governmental correspondence also distinguished reports according to reporting party and described centralized interagency communication as a means of reducing confusion concerning what had and had not been reported.

185. Plaintiff does not allege that every underlying report, referral, contact, or investigative event did not exist. Plaintiff alleges that the warrant presentation nevertheless used an aggregated history of approximately forty-one reports and

accumulated investigative contacts in a manner that materially failed to distinguish the actual sources and nature of those events even though those distinctions were directly relevant to the assertion that Plaintiff herself was generating repeated allegations and causing serious emotional harm.

186. Plaintiff further alleges that materially qualifying information was personally known to County personnel immediately before removal, including Mendoza's August 20 observations and interviews and information personally communicated to Race by Ventura County.

187. Plaintiff alleges on information and belief, and in the alternative, that the constitutional deprivation may have been caused by an actionable County policy, established practice, deliberately indifferent training or supervisory deficiency, policymaker decision, or qualifying ratification governing preparation and review of protective-custody warrant applications. The presently identified municipal process includes use and verification of County-maintained source-specific reporting information, disclosure of materially qualifying information known to warrant participants, and supervisory review of sworn emergency-removal applications. Plaintiff does not presently allege that each alternative Monell theory is independently established.

188. Plaintiff does not contend that the single incident alleged in this Complaint, standing alone, conclusively establishes a longstanding municipal custom. Relevant County policies, training materials, supervisory practices, comparable warrant files,

internal review records, employee instructions, electronic access records, complaints, audits, and policymaker communications are primarily within the County's possession and are not presently available to Plaintiff before discovery.

189. Plaintiff seeks discovery directed to whether the alleged constitutional deprivation resulted from an express County policy; a sufficiently longstanding and widespread practice concerning preparation or review of protective-custody warrants; a deliberately indifferent failure to train or supervise concerning materially accurate warrant presentations; an actionable policy of inaction concerning disclosure of material qualifying information; or a decision or qualifying ratification by an official possessing final policymaking authority. Plaintiff will not pursue municipal liability on a theory that discovery fails to support.

190. Plaintiff alleges municipal liability only to the extent a County policy, established practice, deliberately indifferent omission, policymaker decision, or qualifying ratification is established and shown to have been the moving force behind an underlying constitutional violation.

## X. LIMITATIONS AND DISCOVERY OF UNKNOWN PARTICIPANTS

191. The seizure challenged in this action occurred on August 22, 2024.

192. Plaintiff files this action to preserve her federal constitutional claims arising from the August 22, 2024 seizure and related actionable pre-seizure conduct.

193. Plaintiff subsequently obtained records and sworn testimony identifying additional information concerning reporting-party identities, investigative decisions,

medical evidence, source attribution, and information flow among governmental and other actors.

194. Plaintiff does not allege that later-created testimony or subsequently obtained evidence retroactively establishes what any particular Defendant knew before the seizure.

195. Where later testimony or subsequently obtained records identify evidence, communications, records, or events that already existed before August 22, 2024, Plaintiff relies upon those materials only to identify or corroborate the preexisting information and seeks discovery concerning when, whether, and by whom that information was obtained, accessed, reviewed, transmitted, adopted, disregarded, altered, or used.

196. Material evidence concerning warrant drafts and revisions, supervisory review, County electronic access and audit histories, internal communications, source-specific reporting records, document-routing information, and interagency communications remains primarily or exclusively within Defendants' possession and control.

197. Plaintiff therefore pleads facts concerning internal governmental activities on information and belief only where presently available evidence supplies a good-faith factual basis and where additional evidence concerning internal conduct remains primarily within Defendants' possession.

198. Plaintiff intends promptly to pursue discovery reasonably directed toward identifying DOE Defendants and determining their respective roles in the challenged pre-removal investigation, warrant preparation and review, supervisory decision-making, information sharing, and resulting seizure.

199. Upon learning the identity and role of a DOE Defendant, Plaintiff will seek amendment as permitted by the Federal Rules of Civil Procedure and applicable law.

200. Plaintiff does not concede any defense concerning accrual, limitations, tolling, relation back, substitution of DOE Defendants, or amendment, and does not allege that substitution or amendment automatically relates back. Any relation-back issue will be determined under governing law and the particular facts concerning the amendment, notice, identity of the participant, and other applicable requirements.

## XI. FIRST AMENDMENT FACTS

201. Before the August 22, 2024 seizure, Plaintiff repeatedly engaged in Speech and Petition activity, including reporting alleged child-safety concerns, petitioning governmental officials and oversight bodies concerning alleged governmental misconduct, asserting alleged constitutional violations, and pursuing or communicating an intention to pursue civil litigation.

202. In March 2022, Plaintiff submitted a written governmental oversight complaint in which she contemporaneously alleged that Defendant Race had threatened to characterize Plaintiff's child-safety reporting as emotional abuse.

203. Plaintiff alleges the historical allegation concerning Race to establish chronology and a good-faith basis for discovery concerning later knowledge,

communications, motive, and participation. Plaintiff does not allege that the historical allegation, standing alone, establishes that Race retaliated against Plaintiff in August 2024.

204. Plaintiff continued thereafter to petition governmental officials and pursue complaints and litigation concerning alleged governmental misconduct and constitutional violations.

205. On April 3, 2024, Plaintiff filed a civil action in Santa Barbara County Superior Court against former family-law counsel Jessica Lynn Martinez and Debbie Lee Morawski, alleging professional negligence and breach of fiduciary duties arising from their representation of Plaintiff in the related custody proceedings.

206. Martinez had substantial professional involvement in Santa Barbara County's juvenile-dependency system, including supervision of a County-funded independent-contractor parent-defense team and professional collaboration with social workers and other child-welfare participants.

207. Plaintiff alleges the April 2024 lawsuit and Martinez's documented professional involvement in the local dependency system only as relevant chronology and as a good-faith basis for discovery concerning whether information about Plaintiff's lawsuit, governmental complaints, child-safety reporting, or other protected petitioning activity was communicated to persons who later participated in the August 2024 CWS investigation or warrant process.

208. Plaintiff does not presently allege that Martinez or Morawski communicated with Mendoza, Race, or another CWS participant concerning Plaintiff's lawsuit, caused the August 22 seizure, or supplied retaliatory motive to any governmental participant.

209. Plaintiff further does not allege that temporal proximity, Martinez's professional relationships, or Morawski's later unrelated criminal proceedings, standing alone, establish retaliation. Whether either former counsel communicated information concerning Plaintiff or Plaintiff's litigation to governmental participants before the seizure remains a matter for discovery.

210. During May and June 2024, Santa Barbara County District Attorney Investigator Jeffrey Ellis was directly involved in matters concerning Plaintiff, the children, custody orders, asserted good-cause reporting, related law-enforcement issues, and custody-related complaints.

211. Ellis advised that Santa Barbara County would serve as the primary governmental point of contact for custody- and visitation-related matters involving the children.

212. In June 2024, Ventura County District Attorney personnel informed Plaintiff in writing that Santa Barbara and Ventura Counties had coordinated concerning the case, that Santa Barbara County would remain the primary point of contact, and that the two counties had been keeping one another informed concerning developments.

213. The June 2024 interagency correspondence expressly distinguished reports made by Plaintiff from reports made by Father and stated that centralized communication was intended to reduce confusion concerning what had and had not been reported.

214. Plaintiff alleges the documented information-sharing arrangement as evidence of a functioning governmental information pathway before the August 22 seizure and as a basis for discovery concerning what information was actually transmitted, received, reviewed, summarized, attributed, or omitted. Plaintiff does not allege that the existence of an information-sharing pathway establishes that any particular Defendant actually received a particular communication, knew of Plaintiff's protected activity, or possessed retaliatory motive.

215. Ellis subsequently submitted a declaration documenting, among other matters, that Plaintiff and her attorney had complained of alleged governmental bias and communicated an intention to pursue litigation against governmental entities.

216. Later sworn testimony established that at least one investigating social worker received and reviewed Ellis's declaration during the child-welfare investigation.

217. Plaintiff presently does not know every person who received, reviewed, transmitted, discussed, adopted, or relied upon Ellis's declaration or related communications before the August 22 seizure.

218. Plaintiff presently lacks sufficient evidence to allege that Mendoza or Race personally reviewed Ellis's declaration or personally knew of Plaintiff's protected litigation-related activity before the seizure. Plaintiff therefore does not presently assert First Amendment retaliation individually against Mendoza or Race on that basis unless discovery establishes actual knowledge, retaliatory motive, personal participation, and causation.

219. Plaintiff alleges that the challenged removal theory's reliance upon Plaintiff's alleged reporting conduct, together with Plaintiff's prior governmental complaints concerning alleged adverse treatment arising from reporting, supplies a good-faith circumstantial basis for discovery concerning knowledge and motive. Plaintiff does not contend that similarity of subject matter, temporal sequence, interagency communications, governmental disagreement with Plaintiff, or later adverse proceedings, standing alone, establishes unconstitutional retaliation.

220. Plaintiff seeks discovery concerning creation, circulation, transmission, and review of Ellis's declaration; communications concerning Plaintiff's protected reporting, governmental complaints, and litigation-related activity; communications involving Jessica Martinez or Debbie Morawski and Santa Barbara County CWS personnel, including Mendoza, Race, supervisory personnel, County Counsel, or other participants in the challenged pre-removal process, concerning Plaintiff, Plaintiff's April 3, 2024 civil action, the related family-law proceedings, Plaintiff's child-safety reporting, governmental complaints, or the August 2024 CWS investigation;

communications between Santa Barbara and Ventura County governmental personnel; electronic access and audit histories; source-specific reporting records; warrant drafts and revisions; supervisory-review materials; and the identity, knowledge, motive, participation, and causal role of persons involved in the challenged pre-removal decisions.

## XII. SCOPE OF THIS ACTION

221. Plaintiff does not ask this Court to determine whether Father committed sexual abuse or any other underlying act alleged in the state proceedings.

222. Plaintiff does not ask this Court to determine whether every child-welfare referral was correctly substantiated, unfounded, inconclusive, or otherwise properly classified.

223. Plaintiff does not contend that governmental personnel violate the Constitution merely by receiving a referral, investigating suspected child abuse, interviewing witnesses, or reaching conclusions with which Plaintiff disagrees.

224. Plaintiff does not seek damages merely because a witness, social worker, attorney, or other participant subsequently testified adversely to Plaintiff or advocated an adverse position during dependency proceedings.

225. Plaintiff does not seek reversal, modification, vacation, or collateral review of the juvenile court's jurisdictional, dispositional, custody, or exit orders.

226. Plaintiff instead challenges independently actionable constitutional conduct associated with the pre-seizure investigation, procurement of the August 22, 2024 protective-custody warrants, execution of the resulting seizure, and related conduct

established through discovery to the extent actionable and not protected by applicable immunity.

227. Plaintiff seeks relief solely for injuries to Plaintiff's own federal constitutional rights.

228. While proceeding without counsel, Plaintiff does not purport to represent J.D. or I.D. or prosecute independent constitutional claims belonging solely to either child.

## XIII. FIFTH CLAIM FOR RELIEF
## 42 U.S.C. § 1983
## FIRST AMENDMENT RETALIATION
## First Amendment
## Against DOES 1-20

229. Plaintiff incorporates paragraphs 1 through 228.

230. Plaintiff engaged in activity protected by the First Amendment's Speech and Petition Clauses, including complaints to governmental officials and oversight bodies concerning alleged governmental misconduct and child-safety concerns, assertions of alleged constitutional violations, and pursuing or communicating an intention to pursue civil litigation.

231. On information and belief, one or more DOES 1-20 who personally participated in the pre-removal investigation, warrant process, supervisory decision-making, information sharing, or resulting seizure knew of Plaintiff's protected activity before the August 22, 2024 seizure.

232. Procurement and execution of the protective-custody warrants and the resulting seizure constituted adverse governmental action capable of deterring a

person of ordinary firmness from continuing to engage in protected reporting, petitioning, complaints, or litigation activity.

233. Plaintiff pleads this claim in the alternative and only against a DOE Defendant whose actual knowledge, retaliatory motive, personal participation, and causation are established by evidence.

234. As to each responsible DOE Defendant, Plaintiff alleges that Plaintiff's protected activity was a substantial or motivating factor in that Defendant's challenged conduct and that the challenged conduct would not have occurred absent the retaliatory motive.

235. Plaintiff does not allege that governmental knowledge alone establishes retaliation and does not rely merely upon temporal proximity, similarity of subject matter, disagreement with agency decisions, interagency communications, or later adverse testimony.

236. Plaintiff seeks discovery concerning the matters described in paragraph 220 to determine whether a particular governmental participant actually knew of Plaintiff's protected activity and acted because of that activity.

237. Plaintiff will seek amendment to substitute an identified participant only where discovery establishes a good-faith factual and legal basis for individual retaliation liability and will not pursue retaliation against a person for whom the required evidence is not established.

238. As a direct and proximate result of actionable retaliation established against a responsible DOE Defendant, Plaintiff suffered interference with her familial relationship and other damages according to proof.

## XIV. DAMAGES

239. As a direct and proximate result of constitutional violations proved against Defendants, Plaintiff suffered substantial interference with the care, custody, companionship, society, and familial association of J.D. and I.D.

240. Plaintiff suffered emotional distress, mental anguish, and other personal injury resulting from the alleged unconstitutional seizure and separation, according to proof.

241. Plaintiff suffered economic loss only to the extent such damages are legally recoverable and proven to have been proximately caused by actionable constitutional conduct.

242. Plaintiff seeks damages only to the extent legally recoverable and proximately attributable to each Defendant's independently actionable constitutional conduct. Plaintiff does not seek damages merely because subsequent dependency or custody proceedings occurred or resulted in adverse orders.

243. Plaintiff seeks compensatory damages according to proof.

244. Plaintiff seeks nominal damages for each proven constitutional violation where nominal damages are legally appropriate.

245. Plaintiff seeks punitive damages against individual Defendants only where the evidence establishes the state of mind required for such relief under federal law.

246. Plaintiff does not seek punitive damages against the County of Santa Barbara.

247. Plaintiff seeks taxable costs of suit as permitted by law.

248. Plaintiff seeks reasonable attorney's fees pursuant to 42 U.S.C. § 1988 if and to the extent legally recoverable, including should counsel subsequently appear and such fees become recoverable.

249. Plaintiff seeks prejudgment and postjudgment interest as permitted by law.

## XV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Grace Marie Tudor respectfully requests judgment in her favor and against Defendants as follows:

A. For compensatory damages according to proof;

B. For nominal damages;

C. For punitive damages against appropriate individual Defendants to the extent permitted by law;

D. For costs of suit;

E. For reasonable attorney's fees pursuant to 42 U.S.C. § 1988 to the extent legally recoverable;

F. For prejudgment and postjudgment interest as permitted by law; and

G. For such other and further relief as the Court deems just and proper.

## XVI. DEMAND FOR JURY TRIAL

250. Plaintiff demands trial by jury on all claims and issues so triable.

DATED: August 14, 2026

Respectfully submitted,

/S/ Grace Marie Tudor

GRACE MARIE TUDOR
Plaintiff, Pro Se
Email: Grace@Tudorinternational.com
Telephone: (805) 905-5045
1534 N. Moorpark Rd #242, Thousand Oaks, CA 91360